223 N.J. Super. 265 (1987)
538 A.2d 461
ADELE DEPRIMO, ET AL., PLAINTIFFS,
v.
LEHN & FINK PRODUCTS CO., ET AL., DEFENDANTS.
ARDITH BURT, ET AL., PLAINTIFFS,
v.
LEHN & FINK PRODUCTS CO., ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division Somerset County.
Decided December 18, 1987.
*267 Michael S. Feldman for plaintiffs DePrimo (Ozzard, Wharton, Rizzolo, Klein, Mauro, Savo & Hogan, attorneys).
Kenneth Van Rye, for plaintiffs Burt (Spinato & Van Rye, attorneys).
Michael Muscio, for defendant Wyard Industries.
DiRienzo & Ruotolo, for defendant Dennison Corp.
Gorrin, Whitken, & McFadden, for defendant Peco Controls Corp.
Schwartz & Andolin, for defendant Pacific Packaging.
Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, for defendant PMC Industries.
Lynch, Martin & Philibosian, for defendant Elliott Mfg. Co.
Crummy, DelDeo, Dolan, Griffinger & Vecchione, for Consol. Packaging.
Klein, Chapman, Greenberg, Henkoff & Siegel, for Vickers Miller Hydro.
Kenneth Fost, for defendant Nash Engineering.
ARNOLD, P.J.Cv.
On January 13, 1984 a flash fire erupted at the Lehn and Fink aerosol packing facility in Hillsborough Township, New Jersey. Several minutes later, there was a severe explosion. Plaintiffs, Adele DePrimo and Ardith Burt, employees of Lehn and Fink, were injured in the fire. In this action, they allege, among other things, that the manufacturer of each piece of machinery in the aerosol packaging facility had a duty to warn all the other manufacturers of machinery to make their machinery "explosion proof." These manufacturers now move for summary judgment arguing that the law does not impose such a duty to warn upon them. The research of counsel and the court indicates that this is a novel issue, and this opinion is intended to supplement the court's earlier oral opinion dealing with this issue.
*268 The aerosol packaging facility was housed in one large room. The production line within that room was in the shape of a "U." Empty aerosol cans were loaded on a conveyor at one end of the "U," and traveled down one leg of the "U" where the cans were filled with certain ingredients and stamped with a code number. After making the first turn in the "U," the cans went through a "K-P" gassing room located in the base of the "U" where a flammable propellant, iso-butane, was inserted into the cans. Upon exiting the "K-P" room, the cans went through a weight check area where underweight cans were discarded. The conveyor line then turned to the other leg of the "U" and passed through a water bath designed to locate cans with pin hole leaks. After the cans emerged from the water bath, they were blown dry and carried to the end of the line where they were packed into cartons.
According to the report of plaintiff-DePrimo's expert, there were 12 processes performed at 12 stations on this "U" shaped production line. At station one there was a machine called a can depalletizer manufactured by defendant Wyard Industries. Between stations two and three there was a date coder, manufactured by defendant Dennison Corporation, which placed a date stamp on each can. At station three there were photoelectric controls manufactured by defendant Peco Controls Corporation. A filler machine manufactured by defendant Pacific Packaging was at station four, and a machine called a valve inserter manufactured by defendant PMC Industries was at station five. The "K-P" room was station six, and this room within a room was "explosion proof," meaning that all the equipment and machinery in the "K-P" room did not have an energy source capable of igniting flammable gas. Other machinery manufactured by defendants seeking summary judgment in their favor were at stations nine, ten and eleven. At station nine there was a machine called a case former manufactured by defendant Elliott Manufacturing Co. Consolidated Packaging manufactured a machine called a capping unit which was at station ten. A case picker manufactured by defendant *269 Vickers Miller Hydro loaded the cans into cartons at the end of the production line. Somewhere in the production line, other than in the vicinity of the water bath, there was a vacuum pump manufactured by Nash Engineering Company. None of the machinery at any of the stations, except station six, the "K-P" room, was "explosion proof." The manufacturers of the machinery mentioned above have moved for summary judgment.
According to the report of plaintiff-DePrimo's expert, the point of origin of the fire and resulting explosion was at the water bath at station eight. He was of the opinion that an energy source in the area of the water bath ignited iso-butane fumes leaking from aerosol cans in the area of the water bath, from the nearby can disposal area, and from the non-hermetically sealed "K-P" room. In his opinion, the fire and explosion would not have occurred if all the potential energy sources in the aerosol packaging facility had been "explosion proof." Plaintiff-Burt's expert is of the opinion that the ignition source was a button switch on the water bath at station eight.
This opinion deals only with the motions for summary judgment brought by equipment manufacturers whose machinery and equipment was not in the vicinity of the water bath. Each of these defendants argues that there is no proof that their machinery proximately caused the fire and explosion and that they do not have a duty to warn other equipment manufacturers to provide only "explosion proof" machinery.
In considering these motions for summary judgment, this court believes that recent events militate a conservative approach. In Anderson v. Liberty Lobby Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the United States Supreme Court held that the test for determining whether a factual dispute is genuine for summary judgment purposes is whether a reasonable jury could find for the moving party. Such a determination requires the trial judge to weigh the evidence in light of the ultimate burden of proof. Our New *270 Jersey Supreme Court has taken a more conservative approach than the United States Supreme Court for evaluating a motion for summary judgment. In Dairy Stores, Inc. v. Sentinel Publishing Co., 104 N.J. 125 (1986) the New Jersey Supreme Court held that the traditional test, and not the Liberty Lobby test, is the test for deciding motions for summary judgment. It held that the test is not whether the finder of fact could, in light of the burden of proof, find for the non-moving party, but whether the affidavits have created a genuine issue of material fact. If there is such a genuine issue of material fact then the plaintiff is entitled to a trial on the merits and summary judgment is inappropriate. Dairy Stores, 104 N.J. at 156. This court, therefore, must use this traditional, conservative test to evaluate these defendants' motions for summary judgment.
Turning to the facts in this case, there is no factual dispute as to whether the equipment supplied by these defendants proximately caused the fire and explosion. Indeed, plaintiff-DePrimo's expert states in his report that the fire broke out at station eight and that it is "clear ... that ... the initial ignition source was not from any of the other major pieces of machinery in the aerosol line." Plaintiffs argue, however, that summary judgment is inappropriate because plaintiff-DePrimo's expert has also opined that each of these defendants had a duty to warn the manufacturer of every other piece of machinery and equipment in the aerosol packaging line that their equipment should be "explosion proof." Plaintiff-DePrimo's expert did not state how this duty arose, but opined that if all machinery and equipment in the line had been "explosion proof" the fire and resulting explosion would not have occurred.
Plaintiffs have not presented any authority to support their position. Indeed, the authority presented by defendants and the authority found by this court, while not directly on point, suggests that a manufacturer of a machine used in an assembly line designed by another has no duty to warn manufacturers of *271 other machines used in the assembly line of the dangers involved in the use of their machinery. For example, in Wenrick v. Schloemann-Siemag Aktiengesellschaft, 361 Pa.Super. 137, 522 A.2d 52 (1987), the court held that the manufacturer of an electrical control system for a press had no duty to warn the manufacturer and designer of the press of a defect in the press which resulted from the use of an unguarded switch and its placement in an area where it might be touched accidentally. The court reached this conclusion because the control system manufacturer did not manufacture, supply, sell or install the switch. The fact that the project engineer employed by the manufacturer of the control system saw the unguarded switch in the dangerous location when he visited the plant where the press was installed did not, the court held, impose a duty to warn. From this holding one must conclude that the manufacturer of the control system had no duty to warn the manufacturer of the switch that its use and/or placement was dangerous in the system in which it was integrated.
Similarly, other cases have held that the manufacturer of a component part, which is not defective, does not have a duty to warn the subsequent manufacturer of a machine and his employees of any dangers which arise from integration of the component part into the machine according to the manufacturer's design. Frazier v. Materials Transportation Company, 609 F. Supp. 933 (D.Pa. 1985); Mayberry v. Akron Rubber Machinery Corporation, 483 F. Supp. 407 (D.Oklahoma 1979). See also Orion Insurance Company, Ltd. v. United Technologies Corp. 502 F. Supp. 173 (D.Pa. 1980) (Held: Company that machined component part of helicopter had no duty to warn user of a design defect in the part where defect arose when manufacturer of helicopter incorporated part into helicopter). The reasoning of the courts in these cases suggests that defendants in the within matter did not have a duty to warn each other that their machinery should be "explosion proof."
In this case, there is no factual dispute about the fact that the aerosol packaging line was designed by Lehn and Fink, *272 built by its parent company, Sterling Drug, and that a company called Kretzer-Sikorsky provided some engineering services. None of the defendants whose motions for summary judgment are considered herein did anything more than supply machinery for the aerosol packaging line in accordance with specifications supplied by Lehn and Fink. Certainly a manufacturer has a duty to warn of the dangers that are inherent in the use or foreseeable use of its product. Michalko v. Cooke Color and Chemical Corp., 91 N.J. 386 (1982). However, this court concludes that where a manufacturer's product is just one component of a system, its duty to warn is limited to the duty to warn only of the dangers of its products use in the system. See id. at 399.
Despite the absence of authority, plaintiffs urge this court to deny defendants' motions for summary judgment on the ground that the components involved in the cases discussed above were small and insignificant parts of larger pieces of equipment, whereas, in this case, the claims involve individual pieces of machinery integrated into a production system. This court believes that such a distinction is a distinction without a difference. Furthermore, this court believes that recent events compel it to take a conservative approach and not create a new duty to warn. Those events are as follows:
1. The Appellate Division has cautioned trial judges about expanding causes of action where the cost to society may be too great. In Frame v. Kothari, 218 N.J. Super. 537 (App.Div. 1987), the Appellate Division reversed a trial judge who held that a Portee claim for emotional distress to the parents of a child improperly diagnosed by defendant physician was actionable. One of the bases of the reversal was stated to be that to "impose liability where the malpractice merely consists of an improper diagnosis will result in too great a cost to society and have a profoundly deleterious impact on the medical profession to the detriment of our society as a whole." Id. at 546. Similarly, to impose upon a manufacturer of a machine, used in a system, a duty to warn manufacturers of other *273 machines used in the same system of the dangers of the use of their machines would, in this court's judgment, have a profoundly deleterious impact on industry.
2. The conservative approach taken by our Legislature in the recently enacted products-liability legislation, L. 1987, c. 197. While much of this act appears to be a codification of existing law, subsection a sets forth that it was the Legislature's purpose to enact remedial measures. Indeed, section three appears to reflect an intention to limit the liability of manufacturers. This court believes that, as a matter of sound judicial policy, it should apply this conservative legislative policy. Plaintiff demands a dramatic change in the law. If such a change is warranted it should be accomplished by the Appellate Division or the Supreme Court.
Finally, although a ruling on the contention that plaintiff's expert's opinion is a "net opinion" is unnecessary, this court finds that it is a "net opinion" because it is a bare conclusion unsupported by factual evidence. Buckelew v. Grossbard, 87 N.J. 512 (1981). A reading of the expert's reports and his deposition testimony indicates that he simply is stating his own opinion that each manufacturer of machinery in this aerosol packaging line had a duty to warn the manufacturers of other machinery that their machinery should be "explosion proof." He refers to no standards which suggest that such a duty exists. While the fire and explosion might not have occurred if all machinery in this production line were "explosion proof," that does not create a duty to warn as stated by the expert. However, this court would be disinclined to grant summary judgment solely on the basis that the expert's opinion is a "net opinion." Continental Bank v. Wa-Ho Brokerage, 595 P.2d 206 (Ct.App. 1979).
Accordingly, defendants' motions for summary judgment are granted.