Patrick E. O'BRIEN and Nancy O'Brien, his wife,
Plaintiffs-Appellants,†

BLUE CROSS & BLUE SHIELD UNITED OF
WISCONSIN, Plaintiff,

v.

MEDTRONIC, INC., Defendant-Respondent.

Court of Appeals

*No. 88-1802. Submitted on briefs January 10, 1989.—Decided
March 14, 1989.*

(Also reported in 439 N.W.2d 151.)

† Petition to review denied.

For plaintiffs-appellants there were briefs by *I. Gregg Curry IV* of *McCarty, Curry, Wydeven, Peeters & Riester,* of Kaukauna.

For defendant-respondent there was a brief by *William J. Corrigan* of *Menn, Nelson, Sharratt, Teetaert & Beisenstein, Ltd.,* of Appleton.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.   Patrick and Nancy O'Brien appeal a judgment and order dismissing their complaint against Medtronic, Inc. The O'Briens contend that the trial court erred by concluding that they could not recover damages incurred when Patrick had a Medtronic pacemaker lead implanted in his chest replaced even though his lead appeared to be operating properly. The trial court found there was no evidence that his original unit was defective, that it had not at any time malfunctioned, and that replacement was not medically necessary. We conclude as a matter of law that the O'Briens cannot recover because the alleged wrongful acts on the part of Medtronic are too remote from their injuries. Therefore, we affirm.

In January, 1982, Patrick had a Medtronic pacemaker and polyurethane insulated lead, Model 6972, implanted. On February 20, 1984, Medtronic issued a memo stating that the failure rate for Model 6972 leads at that time was five in one thousand per month three years after implant, or approximately ten percent after three years. On June 25, Medtronic notified doctors that a previously issued FDA Class II recall was being upgraded to a Class I recall for unused units based on concern for "the very small number of totally pacemaker dependent patients."[1]

On July 12, Medtronic issued another advisory recommending that no additional Model 6972 leads be implanted and that any unused inventory be returned to Medtronic. This advisory indicated that the failure rate was 8.6% after thirty-nine months. Most of the lead failures were in models containing polyurethane insulation, the type of lead implanted in Patrick's chest.

In August, 1984, Patrick read a newspaper article stating that the type of lead he had was experiencing an unusually high failure rate. He telephoned his physician, Dr. Lowell Peterson, who said he was unaware of any problem. However, a week later Dr. Peterson contacted Patrick to inform him that Medtronic recommended that individuals with this model lead be monitored once a month to detect any possible malfunction.

Monitoring disclosed that the pacemaker was operating normally. Although on one occasion an examiner noted that Patrick was dependent on the pacemaker,

---

[1]The FDA orders a Class II recall where a product may cause temporary or reversible adverse health consequences or the probability of serious health consequences is considered remote. A Class I recall is issued when there is a reasonable probability that use of the product will cause serious adverse health consequences or death.

Dr. Peterson commented in a medical report that there was no indication Patrick was pacemaker-dependent.

During the summer of 1984, Patrick reported experiencing shock sensations in his chest and that his pacemaker was making clicking noises. He became increasingly agitated and concerned that his lead was not functioning properly. However, upon examination, Dr. Peterson concluded that nothing was wrong with the pacemaker.

Nonetheless, Patrick insisted that Dr. Peterson replace the lead. Dr. Peterson initially recommended that Patrick not have the operation because of the risks involved. He suggested that they postpone surgery until a problem with his pacemaker arose. Eventually, Dr. Peterson agreed to the replacement based on Patrick's emotional reaction to the advisories and the recall. This decision was not based on the fact that there was anything wrong with Patrick's pacemaker or that Patrick was so dependent on the pacemaker that surgery was medically necessary. Rather, Dr. Peterson based his recommendation on the fact that surgery was the only way to alleviate the extreme emotional distress suffered by Patrick once he heard about the advisories and the recall.

In his deposition, Dr. Peterson stated that when Patrick came in for surgery, Dr. Peterson advised him that, as far as he knew, the pacemaker was working properly and there was no indication he was totally dependent on the pacemaker or that he would have significant problems if the pacemaker were to malfunction. Nevertheless, Patrick underwent surgery on October 2, 1984. Although the surgeons inserted a new lead, they could not remove the original one at that time. Because the lead left in his chest resulted in complica-

tions, Patrick underwent open heart surgery in November to remove it.

The O'Briens filed suit against Medtronic in May, 1987. Their first cause of action was for strict liability. The O'Briens alleged that the lead was defective in design, manufacture, and materials used in manufacture, and that the lead failed because of its defective condition. Their second and third causes of action were for negligence. They alleged that Medtronic was negligent in the manufacture and design of the lead and that this was the proximate cause of their injuries. Alternatively, the O'Briens alleged that Medtronic was negligent in warning Patrick that the lead was defective by issuing the advisories when in fact it was not. The O'Briens sought to recover damages for extreme emotional distress, pain and suffering, and medical expenses.

Medtronic filed a motion for summary judgment, which the trial court granted. The court concluded that there was no evidence that Patrick's pacemaker lead was defective and that Medtronic never informed him that his pacemaker was defective, but only that individuals with Model 6972 leads should be monitored on a monthly basis.

The only issue presented for review is whether, under the facts presented, the O'Briens have a cause of action recognized under Wisconsin law. We conclude that because the injuries sustained are too remote from Medtronic's conduct regarding Patrick's pacemaker lead, the O'Briens do not have a cause of action.

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Sec. 802.08(2), Stats. On review of a summary judgment, we

apply the same statutory standards as the trial court. *Messner v. Briggs & Stratton Corp.,* 120 Wis. 2d 127, 131, 353 N.W.2d 363, 365 (Ct. App. 1984).

One element of a strict product liability claim is that the product be defective. *Dippel v. Sciano,* 37 Wis. 2d 443, 460, 155 N.W.2d 55, 63 (1967). The O'Briens argue that the Model 6972 lead's above average failure rate, the FDA recalls, and Medtronic's own advisories sufficiently address the defectiveness requirement so as to entitle them to maintain their strict liability and negligence claims.

Not all injuries that occur in some way as a result of another's conduct are redressible in a court of law. Some injuries are so indirectly related to the conduct of a person that notwithstanding the fact that emotional distress is suffered, no recovery is permitted. *See Garrett v. City of New Berlin,* 122 Wis. 2d 223, 229, 231, 362 N.W.2d 137, 140–41 (1985).

Had the O'Briens presented any evidence that Patrick's lead was defective or had malfunctioned, they would have a cause of action recognized under Wisconsin law. Had Dr. Peterson recommended replacement because he felt that replacement was medically necessary as a direct result of Medtronic's conduct or had there been sufficient evidence as to some reasonable objective basis for replacement, the O'Briens might also have a cause of action.

However, none of these facts exist here. There was nothing wrong with Patrick's lead, nor was there any evidence that replacement was medically necessary. Medtronic kept Dr. Peterson apprised of any developments regarding the lead's safety. Because Patrick was

not pacemaker-dependent, the monthly monitoring recommended by Medtronic was sufficient to detect any problems with the lead.

Furthermore, the mere fact that the model's failure rate was unusually high, as Medtronic admitted in its advisories, does not automatically create liability. Under the circumstances, the real cause of the O'Briens' injuries was Patrick's personal belief that his pacemaker was likely to fail unless the lead was replaced, that such a failure would be life-threatening, and that the risk of failure outweighed the risks of replacement surgery. However, there was no evidence that such a belief had any basis in fact.

Finally, we note the adverse consequences of permitting recovery under the facts presented.[2] First, it would propel us down the slippery slope of liability when the product is not defective. Generally, we do not want to impose liability on a company for making a particular unit that is not defective. If we are going to do so based only on a higher-than-average failure rate, it would present difficult line-drawing problems. Additionally, were we to allow recovery here, liability would be based on the recipient's subjective state of mind no matter how unreasonable that might be. The undesirability of that result is apparent.

Second, imposing liability under these facts could discourage companies like Medtronic from developing certain kinds of medical devices. Such companies

---

[2]We apply negligence policy considerations to the product liability theory because the same policy factors are applicable to the strict liability doctrine. *See Becker v. State Farm Mut. Auto Ins. Co.,* 141 Wis. 2d 804, 817, 416 N.W.2d 906, 912 (Ct. App. 1987).

should be and are held to a reasonable standard of care for directly caused injuries notwithstanding the desirability of encouraging marketing of potentially life-saving devices. *See Collins v. Eli Lilly Co.,* 116 Wis. 2d 166, 197, 342 N.W.2d 37, 52 (1984). However, because of the social utility of what companies like Medtronic do, holding them liable for indirect or remote injuries is not warranted. Extending liability where an individual pacemaker is properly functioning merely because other units of the same model have failed, without more, is not in society's best interest. Last, such an extension of liability could discourage companies from informing the public about problems with its products, particularly where the increased risk associated with a product is relatively small. For these reasons, we conclude that the trial court correctly dismissed the O'Briens' complaint.

In this case, there is not a sufficient relationship between Medtronic's conduct and Patrick's injuries to establish a cause of action. However, we do not hold that a cause of action exists only where the specific unit is defective.

*By the Court.*—Judgment and order affirmed.