**Aaron BRAVMAN and Muriel Bravman, Plaintiffs,**

v.

**BAXTER HEALTHCARE CORPORATION, Defendant.**

No. 89 Civ. 3444 (RWS).

United States District Court, S.D. New York.

May 18, 1992.

Cowan, Liebowitz & Latman, P.C. (Joshua Paul, of counsel), New York City, for plaintiffs.

Butler, Snow, O'Mara, Stevens & Cannada by Lee Davis Thames, J. Carter Thompson, Jr., William M. Gage, Jackson, Miss. (Cadwalader, Wickersham & Taft, of counsel) by Wendell B. Alcorn, Jeanne P. Bolger, New York City, for defendant.

## OPINION

SWEET, District Judge.

Defendant Baxter Healthcare Corporation ("Baxter") has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure to dismiss the Amended Complaint of Plaintiffs Aaron Bravman ("Bravman") and his wife Muriel. For the reasons set forth below, Baxter's motion is granted, and judgment dismissing the Amended Complaint will be entered.

### The Parties

Bravman and his wife are Pennsylvania residents. Bravman, a retired stock broker, is in his mid–60s.

Baxter is an Illinois corporation with its principal place of business in Deerfield, Illinois. Baxter's Edwards CVS Division manufactured an Edwards–Duromedics Bileaflet Heart Valve ("Edwards–Duromedics Heart Valve") surgically implanted in Bravman's heart.

### Prior Proceedings

The Bravmans filed this action on May 17, 1989. On June 7, 1989, they filed an Amended Complaint as a matter of right. In the Amended Complaint, Bravman asserts four causes of action: breach of express warranty, breach of implied warranty, negligence, and strict products liability. Mrs. Bravman seeks damages for loss of consortium.

Baxter filed the present motion on October 9, 1991. Oral argument was heard on January 9, 1992, and the motion considered submitted as of that date.

### Facts

On April 5, 1988, Bravman underwent surgery at New York University Hospital to replace his natural mitral heart valve with an artificial Edwards–Duromedics Heart Valve. Bravman's natural valve had begun to deteriorate rapidly in the 1980's from mitral stenosis. The mitral stenosis resulted from a bout of rheumatic fever Bravman endured as a child. Without the surgery, it was estimated that Bravman would have lived no more than another five years.

The Edwards–Duromedics Heart Valve implanted in Bravman has continuously functioned as intended with one exception—it clicks. While all artificial heart valves make a certain amount of noise, Bravman contends that his is inordinately loud. In fact, his heart valve can be heard ten, twelve, even thirty-feet from him.

Bravman began to complain to his doctors about the noise soon after his surgery. The valve's vibrations and clicks have caused him great distress. He cannot sleep, is frequently despondent, and is unable to concentrate for very long, for he is constantly aware of the valve's presence. This resulted in his taking an early retirement several months after surgery. Bravman has also explored the possibility of replacing the valve.

Before undergoing surgery, Bravman met once with his surgeon. During the meeting, the surgeon explained that there are two types of heart valves, porcine and mechanical. Porcine valves are fashioned from natural pig tissue. Under the circumstances, the surgeon recommended that a mechanical valve be inserted since it was likely to last longer than a porcine valve. At no time during the meeting did the surgeon explain that mechanical heart valves click. Bravman's surgeon has submitted an affidavit stating that, had he known of the reports concerning the valve's noise in 1988, he still would have implanted the Edwards–Duromedics Heart Valve in Bravman.

Baxter ceased to manufacture the Edwards–Duromedics Heart Valve and withdrew it from the market shortly after Bravman's surgery. The company had received reports of "leaflet escape" and withdrew the valve at the suggestion of the Food and Drug Administration. The Edwards–Duromedics Heart Valve uses two movable disks, or leaflets, that open and close with each beat of the heart, thus controlling the flow of blood. Leaflet escape occurs when a leaflet structure fails, causing the leaflet to break away from the valve and enter the blood stream. Of the roughly 18,364 Edwards–Duromedics Heart Valves successfully implanted since 1982, leaflet escape had occurred in twenty mitral valves and five other valves by October 1991. Seventeen of these twenty-five patients survived.

The leaflets in Bravman's heart valve appear to function as intended. The clicking of the valve as his heart beats indicates the leaflets are opening and closing normally. Indeed, one of Bravman's doctors believes that the characteristic clicking of all mechanical heart valves serves as a beneficial diagnostic. Absence of a click generally indicates that something is seriously amiss. *See* Abramowitz Depo. 92. Nevertheless, Bravman contends he "lives unnecessarily with the fear that his Duromedics valve may fail mechanically. He is reminded of this fact during every waking moment because his heart valve is so loud." Memorandum in Opposition 2.

Bravman has submitted evidence showing that Baxter and the company from which it bought the rights to the Edwards–Duromedics Heart Valve knew that the valve tended to be noisier than other artificial heart valves before Bravman's surgery. As early as 1985, Baxter's predecessor had received complaints about the noise. In August 1985, the company sent someone to investigate a valve implanted in a patient in Arizona that could be heard from twenty feet away. Baxter also conducted a study comparing the noise generated by its valve with the St. Jude Medical Valve. An independent physician made a presentation to the American Heart Association in November 1986, during which the physician stated that one problem with the Edwards–Duromedics Heart Valve was its excessive noise. At a symposium Baxter sponsored in February 1987, other doctors noted concerns over the valve's noise. Two doctors argued that the potential for noise be discussed with patients before surgery.

According to Baxter's director of research and development, whether a particular Edwards–Duromedics Heart Valve is noisy depends on factors unique to the individual into whom it is implanted. *See* Ely Depo. 139. Bravman suggests that the Edwards–Duromedics Heart Valve is noisier than the St. Jude Medical valve because the St. Jude valve uses a leaflet that is

about one-half as thick as the Edwards–Duromedics Heart Valve. *See* Letter from D. Wieting (Dec. 13, 1986). However, a study conducted by Baxter in 1987 shows that the Edwards–Duromedics Heart Valve was less noisy than two other artificial heart valves available at that time.

*Discussion*

Baxter argues that it is fully entitled to summary judgment because Bravman's Edwards–Duromedics Heart Valve has operated as intended continuously since it was implanted in his heart. Bravman opposes the motion by contending that his heart valve is defectively noisy and that Baxter breached its duty to warn of this potential.

"Summary judgment may be granted only when there is no genuine issue of material fact remaining for trial and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). 'As a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party.' However, where the nonmoving party will bear the burden of proof at trial, Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the nonmoving party's claim." *Bay v. Times Mirror Magazines, Inc.,* 936 F.2d 112, 116 (2d Cir.1991) (citations omitted). As is often stated, "[v]iewing the evidence produced in the light most favorable to the nonmovant, if a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir.1991); *see also Bay,* 936 F.2d at 116.

For the purposes of the present motion, the Court assumes Bravman's Edwards–Duromedics Heart Valve pulses with a tonitruous jangle. It also assumes that a question of fact exists as to whether Bravman's surgeon would have acted as an intervening cause. *See, e.g., Hoffman–Rattet v. Ortho Pharmaceutical Corp.,* 135 Misc.2d

750, 516 N.Y.S.2d 856, 860–61 (Sup.Ct. 1987). The parties agree that New York law governs the dispute. For the reasons set forth below, Baxter is entitled to summary judgment as a matter of law.

I. Bravman's Product Liability Claims

 Under New York law, tort liability cannot be imposed upon the manufacturer of a product unless:

(1) the product is "defective" because it is not reasonably safe as marketed;

(2) the product was used for a normal purpose;

(3) the defect was a substantial factor in causing the plaintiff's injuries;

(4) the plaintiff by the exercise of reasonable care would not have both discovered the defect and apprehended its danger;

(5) the plaintiff would not have otherwise avoided the injury by the exercise of ordinary care.

*Wolfgruber v. Upjohn Co.,* 72 A.D.2d 59, 423 N.Y.S.2d 95 (1979), *aff'd,* 52 N.Y.2d 768, 436 N.Y.S.2d 614, 417 N.E.2d 1002 (1980). Where the plaintiff asserts a failure to warn claim, "negligence and strict liability are equivalent". *Id.; see Fane v. Zimmer, Inc.,* 927 F.2d 124, 130 (2d Cir. 1991). Additionally, consumer claims sounding in tort or breach of implied warranty are substantively the same, requiring the same elements of proof. *See Elsroth v. Johnson & Johnson,* 700 F.Supp. 151, 158 (S.D.N.Y.1988).[1]

Baxter argues that any injury Bravman may have suffered is not compensable under New York Law. Broadly read, the Amended Complaint alleges two different sources of injury: (1) the Edwards–Duromedics Heart Valve has failed on a number of occasions and knowledge of this has caused Bravman to fear his own valve's failure, and (2) his Edwards–Duromedics Heart Valve makes a loud, disturbing click that reminds Bravman of its presence and the possibility it might fail. It is conceded that Bravman's Edwards–Duromedics Heart Valve has not failed and has not inflicted a direct physical injury on him.

---

**1.** Bravman has failed to show that an express warranty exists.

Any physical distress Bravman has suffered has been a consequence of his emotional injuries.

*A.* *The Fear of Failure Cause of Action*

■ Standing alone, Bravman may not be compensated for his fear that his Edwards–Duromedics Heart Valve may one day fail. Although no direct New York authority can be found, case law suggests that New York courts would follow those courts that have considered the issue and not recognized such a cause of action. *See, e.g., Willett v. Baxter International, Inc.,* 929 F.2d 1094, 1099–100 (5th Cir.1991) (applying Louisiana law); *Sill v. Shiley, Inc.,* 735 F.Supp. 337, 339–40 (W.D.Mo.1989) (applying Missouri law); *Spuhl v. Shiley, Inc.,* 795 S.W.2d 573, 581 (Mo.Ct.App.1990); *Simmons v. Shiley, Inc.,* No. 89–CV–1471, trans. (N.D.N.Y. Aug. 17, 1990) (applying New York law); *see also O'Brien v. Medtronic, Inc.,* 149 Wis.2d 615, 439 N.W.2d 151, 154 (Ct.App.1989) (pacemaker).

■ First, New York generally does not recognize a cause of action for a faulty heart valve until the valve actually fails and causes a physical harm. In *Martin v. Edwards Laboratories,* 60 N.Y.2d 417, 469 N.Y.S.2d 923, 457 N.E.2d 1150 (1983), the New York Court of Appeals held that the date the statute of limitations begins to run with respect to a product implanted in the body is the date of injury, "which will most often be the date when the product malfunctions". *Id.* 469 N.Y.S.2d at 929, 457 N.E.2d at 1156. The court explained:

> An implanted or inserted device intended to perform a continuing function ... causes no injury until the product malfunctions. Until that time the recipient ... has no cause to complain. If through malfunction the product is thought to have caused harm, it can in most cases be removed and examined to ascertain whether in fact it malfunctioned and, if so, whether that was the cause of harm.

*Id.* at 928, 457 N.E.2d at 1155. In applying the rule, the court held that a cause of action for a faulty heart valve accrued when the heart valve began to malfunction and disintegrate, and not when it was implanted. *Id.* at 929, 457 N.E.2d at 1156. Since Bravman's valve continues to function as intended, any cause of action he might have for emotional damages arising out of his valve's failure, if ever, has not yet accrued.

■ Second, New York has narrowly defined those instances in which a plaintiff may recover emotional damages. In general, "there is no duty to protect from emotional injury a bystander to whom there is otherwise owed no duty, and, even as to a participant to whom a duty is owed, such injury is compensable only when a direct, rather than a consequential, result of the breach". *Kennedy v. McKesson Co.,* 58 N.Y.2d 500, 462 N.Y.S.2d 421, 424, 448 N.E.2d 1332 (1983). A third party may therefore recover emotional damages for injuries suffered by others only in narrowly prescribed instances. *See, e.g., Bovsun v. Sanperi,* 61 N.Y.2d 219, 473 N.Y.S.2d 357, 362, 461 N.E.2d 843 (1984).

New York has been traditionally skeptical of emotional damage claims, leading to some apparently harsh results. In *Howard v. Lecher,* 42 N.Y.2d 109, 397 N.Y.S.2d 363, 366 N.E.2d 64 (1977), for example, the Court of Appeals did not allow the parents of a child afflicted with Tay–Sachs disease to recover for the emotional injuries they sustained from watching their child suffer and die. Even though the parents had obviously suffered too, the court declined to extend the boundaries of liability for fear of having to draw artificial and arbitrary lines in the future. *Id.* 397 N.Y.S.2d at 365, 366 N.E.2d 64; *see also Becker v. Schwartz,* 46 N.Y.2d 401, 413 N.Y.S.2d 895, 901, 386 N.E.2d 807 (1978) (not allowing parents of child with Down's syndrome to recover emotional damages, but allowing recovery for pecuniary losses).

This rule was varied somewhat in *Bovsun.* The court there allowed a family member to recover for the emotional harm caused by observing the suffering of another immediate family member when both were in the same zone of danger created by the wrongdoer. However, the right was narrowly drawn:

We are not suggesting that any trifling distress would be sufficient to support recovery of damages under the zone-of-danger rule. Rather the emotional disturbance suffered must be serious and verifiable (see Restatement, Torts 2d, § 436, subd [3], Comment *g* ). Additionally, the compensable emotional distress must be tied, as a matter of proximate causation, to the observation of the serious injury or death of the family member....

*Bovsun*, 473 N.Y.S.2d at 363, 461 N.E.2d 843; *see also Battalla v. New York*, 10 N.Y.2d 237, 219 N.Y.S.2d 34, 176 N.E.2d 729 (1961); *Gerardi v. Nuclear Utility Services, Inc.*, 149 Misc.2d 657, 566 N.Y.S.2d 1002, 1004–5 (Sup.Ct.1991) (breach of duty resulting directly in emotional harm compensable without physical harm so long as breach unreasonably endangers physical safety).

Baxter owes a duty of care to not only Bravman, but to all recipients of the Edwards–Duromedics Heart Valve. Even if breach to one can be considered a breach to all, only a handful of the recipients have actually suffered a physical injury as the result of such a breach. Bravman's relationship to the other recipients is much more attenuated than the familial relationship recognized in *Bovsun* and at issue in *Howard*, and unlikely to be recognized by New York courts. Further, because there is no evidence showing that his physical safety has been unreasonably endangered, *compare Gerardi*, 566 N.Y.S.2d at 1005 (allowing damages for emotional harm where asbestos inhaled), Bravman does not have a cause of action arising out of the known failures of the Edwards–Duromedics Heart Valve.

Third, New York courts have traditionally limited the scope of tort remedies. *See, e.g., Enright v. Eli Lilly & Co.*, 77 N.Y.2d 377, 568 N.Y.S.2d 550, 555, 570 N.E.2d 198 ("It is our duty to confine liability within manageable limits."), *cert. denied,* — U.S. ——, 112 S.Ct. 197, 116 L.Ed.2d 157 (1991). The fear cause of action essentially seeks to extend tort theory to its limits by imposing liability on Baxter even though Bravman's valve has not failed. Liability without defect is a rather novel, and dubious, theory. *See* James Henderson, Jr. & Aaron Twerski, *Closing the American Products Liability Frontier: The Rejection of Liability without Defect*, 66 N.Y.U.L.Rev. 1263 (1991). As noted by the Fifth Circuit, recognition of such a theory would cause money to flow in a circle: from patient to company and back to patient, with the underlying cost continually escalated by administrative and attorneys' fees. *See Willett*, 929 F.2d at 1100 n. 20. Unless this Court were to undertake the type of line-drawing criticized by New York courts, recognition of such a cause of action could have the marketplace result of increasing the price of many everyday objects to compensate all those, i.e., all consumers, who fear that the objects might fail. Taken to its logical extreme, fear claims could eventually swallow claims for physical injuries, depriving the traditional plaintiff of adequate compensation. *See* 66 N.Y.U.L.Rev. at 1289–92. Bravman therefore has failed to state a legally cognizable cause of action for the fear that his Edwards–Duromedics Heart Valve may fail. *Willett*, 929 F.2d at 1099; *Spuhl*, 795 S.W.2d at 580–81; *see also Feinstein v. Firestone Tire and Rubber Co.*, 535 F.Supp. 595 (S.D.N.Y.1982) (no cause of action for defect that never manifested itself).

B. *The Clicking Cause of Action*

Bravman contends that, even if he does not have a cognizable fear claim, his Edwards–Duromedics Heart Valve is defective, and Baxter breached its duty to warn him of this potential defect. However, the alleged defect is not a compensable defect as a matter of law.

In New York, a manufacturer may be held strictly liable for a manufacturing defect, for a design defect, and for failing to adequately warn of a product's defects. *See Voss v. Black & Decker Manufacturing Co.*, 59 N.Y.2d 102, 106–07, 463 N.Y.S.2d 398, 450 N.E.2d 204 (1983). Proving such a claim requires an unreasonably dangerous defect that leads to physical injury, *see generally* Restatement (Second) of Torts § 402A & comment i, that is, "if

the defect were known at the time of manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner". *Voss*, 59 N.Y.2d at 108, 463 N.Y.S.2d 398, 450 N.E.2d 204.

### 1. Design Defect

Bravman hints at a design defect claim by suggesting that one of the reasons the Edwards–Duromedics Heart Valve might be noisy is that its leaflets are twice as thick as those on a St. Jude Medical Valve. The primary purpose of the valve's design is to control the flow of blood, allowing its recipients to enjoy fuller and longer lives. As the overwhelming majority of the Edwards–Duromedics Heart Valves continue to meet this goal, it is reasonable to conclude as a matter of law that the utility of their design outweighs isolated instances of excessively noisy valves.

■ Of the approximately 18,364 Edwards–Duromedics Heart Valves successfully installed, only the valves of Bravman and one other person emit extremely loud clicks. Although other recipients were troubled by noise, their number is not significant. The record further shows that the Edwards–Duromedics Heart Valve was less noisy than two other valves that were then available. Given the large number of persons whose lives were saved by the Edwards–Duromedics Heart Valve and the state of technology, Bravman has failed to establish that the Edwards–Duromedics Heart Valve was defectively designed. *See Voss*, 59 N.Y.2d at 108, 463 N.Y.S.2d 398, 450 N.E.2d 204; *Rainbow v. Albert Elia Building Co.*, 79 A.D.2d 287, 436 N.Y.S.2d 480 (1981), *aff'd*, 56 N.Y.2d 550, 449 N.Y.S.2d 967, 434 N.E.2d 1345 (1982); *see also Willett*, 929 F.2d at 1097–98.

### 2. Product Defect

■ Bravman contends that his Edwards–Duromedics Heart Valve is defective because it is noisy and has not performed as intended, thus injuring him. To prevail on a product defect claim, though, he must show that his heart valve has a legally cognizable defect and that that defect has caused him physical harm.

Section 402A of the Restatement allows a consumer to recover for physical harm caused by "a defective condition *unreasonably dangerous* to the user or consumer". *See Schiavone Construction Co. v. Elgood Mayo Corp.*, 56 N.Y.2d 667, 451 N.Y.S.2d 720, 436 N.E.2d 1322 (1982). A stone in a can of beans that causes someone to chip a tooth is such a condition, *see* Restatement (Second) of Torts § 402A illustration 1. So is a soda bottle that explodes, a ladder step that breaks, an accelerator pedal that sticks, etc. Each creates an unreasonably dangerous condition unexpected by the user. There are many other types of defects, however, that do not create such a condition and are not compensable as a tort. *See generally Butler v. Pittway Corp.*, 770 F.2d 7, 10–11 (2d Cir.1985) (listing cases). While the latter types of defects typically result in economic loss and are compensable in contract, they also underscore the fact that the law often does not provide a remedy for every wrong. *Howard*, 397 N.Y.S.2d at 366, 366 N.E.2d 64; *see County of Suffolk v. Long Island Lighting Co.*, 728 F.2d 52, 62–63 (2d Cir. 1984).

■ Even if a noisy heart valve can be considered defective, there is no evidence showing that such a defect is unreasonably dangerous. Bravman has failed to show the clicking has placed him in harm's way. Rather, it might indicate the opposite is true. While a product without an unreasonably dangerous defect can often be replaced, that option is likely to be unavailable to Bravman since he faces a much greater risk of death by undergoing surgery than by leaving the valve in place. Although the Court empathizes with the dilemma Bravman faces, he nevertheless has failed to show that the defect is unreasonably dangerous and that he has suffered any direct physical injury.

### 3. Failure to Warn

Bravman also contends that Baxter knew of the valve's noisy characteristic before he

underwent surgery and was required to warn his surgeon of this potential.

 A manufacturer is under a continuing obligation to warn of a product's potential dangers of which it knew or should have known. A manufacturer is generally in the best position to discern and correct dangerous product defects, justifying placing this responsibility on it. *See Baker v. St. Agnes Hospital*, 70 A.D.2d 400, 421 N.Y.S.2d 81, 85 (1979). Nevertheless, a manufacturer is not under a duty to warn of each and every defect in a product—the law properly limits the duty to dangerous defects that are not obvious.

Bravman primarily relies on New York cases requiring drug manufacturers to notify the medical community of their products' side effects in making this argument. From this, he appears to imply that a heart valve is an unavoidably unsafe product and that Baxter had an obligation to warn his surgeon of the noise potential. *See* Restatement (Second) of Torts § 402A comment k. Because Baxter failed to warn of this effect, the argument goes, it cannot avail itself of comment k's defense. *See Lindsay v. Ortho Pharmaceutical Corp.*, 637 F.2d 87, 90 (2d Cir.1980).

Comment k is applied most commonly to drugs because, unlike other products, "drugs may cause untoward side effects despite the fact that they have been carefully and properly manufactured". *Lindsay v. Ortho Pharmaceutical Corp.*, 637 F.2d 87, 90 (2d Cir.1980); *see* Restatement (Second) of Torts § 402A comment k (discussing Pasteur's rabies vaccine). Under its terms, an unavoidably unsafe product, "properly prepared, and accompanied by proper directions and warning, is not defective, nor is it *unreasonably* dangerous". *Id.* (emphasis in original); *see Baker*, 421 N.Y.S.2d at 85.

A product is unavoidably unsafe if it has the potential to inflict a physical harm. *See Lindsay*, 637 F.2d at 93–94 (oral contraceptives that can cause stroke); *Wolfgruber*, 423 N.Y.S.2d at 96 (antibiotic with side effects of diarrhea and colitis); *Baker*, 421 N.Y.S.2d at 83 (anticoagulant with ability to cross placental barrier and cause

fetal death); Restatement (Second) of Torts § 402A(1) ("physical harm thereby caused to the ultimate user of consumer"). The insertion of a mechanical heart valve indeed can have such side effects, including stroke and myocardial infarction. The record shows, however, that Bravman's surgeon knew of these risks and discussed them fully with Bravman. The two also discussed the difference between porcine valves and mechanical valves, with the surgeon recommending the insertion of the more durable mechanical valve.

The record also shows that Baxter and its predecessor knew that there were complaints about the noise generated by the Edwards–Duromedics Heart Valve. There was some concern over this effect, but no evidence that it could cause direct physical harm. In comparison, upon learning of relatively few instances of leaflet escape, Baxter took immediate action in warning the market and withdrawing the valve. This prudent action no doubt help save lives, given the low percentage of patients who have died from valve failure since the warning was circulated.

 Life-threatening side effects readily fall within comment k's scope. A manufacturer is expected to warn about the possibility of danger so that doctors, as intermediaries, and others can make intelligent judgments concerning the risks associated with a product. *See Willett*, 929 F.2d at 1099. A noisy prosthetic device, however, does not pose such a threat. There is no evidence showing that the Edwards–Duromedics Heart Valve has inflicted any physical harm on Bravman, nor that a failure to warn him of the noise has placed him in physical danger, *see Gerardi*, 566 N.Y.S.2d at 1005. Indeed, the clicking indicates that the Edwards–Duromedics Heart Valve continues to regulate the flow of blood through Bravman's heart, as intended.

 Whatever harm may exist in a noisy heart valve is far outweighed by the life-sustaining benefit the device confers. Bravman's proposed cause of action is novel and finds little support in New York law.

Allowing Bravman to recover for his alleged injury would extend that law far beyond its present limits, a step this federal court is not prepared to take. *See Garland v. Herrin,* 724 F.2d 16, 20 (2d Cir. 1983). Baxter is therefore entitled to summary judgment against Bravman's claims as a matter of law.

II. Loss of Consortium

Mrs. Bravman's alleged claim for loss of consortium is derivative. Because her husband has failed to establish a claim, Baxter is entitled to summary judgment on her claim as well. *See Jones v. United States,* 720 F.Supp. 355, 369 (S.D.N.Y.1989); *Liff v. Schildkrout,* 49 N.Y.2d 622, 427 N.Y.S.2d 746, 749, 404 N.E.2d 1288 (1980).

Conclusion

For the reasons set forth above, Baxter's motion for summary judgment is granted, and the Amended Complaint dismissed. Settle judgment on notice.

It is so ordered.