Robert WALUS, et al., Plaintiffs,

v.

PFIZER, INC., et al., Defendants.

Civ. No. 92–3407 (CSF).

United States District Court,
D. New Jersey.

Jan. 22, 1993.

Foley, Gazi & Jorgensen, P.A. by William H. Gazi, Iselin, NJ, for plaintiffs.

Porzio, Bromberg & Newman by Lauren E. Handler, Morristown, NJ, Kaye, Scholer, Fierman, Hays & Handler by David Klingsberg, Maris Veidemanis, New York City, for defendants, Pfizer, Inc. and Shiley, Inc.

OPINION

CLARKSON S. FISHER, District Judge.

Before the court is a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure by defendants, Pfizer, Inc. ("Pfizer") and Shiley, Inc. ("Shiley"), for an order granting summary judgment in their favor on plaintiffs' complaint. The court has considered the parties' written submissions and oral argument. For the reasons set forth below, defendants' motion is granted.

*Facts*

This is an action involving a prosthetic heart valve manufactured by Shiley that was implanted in plaintiff Robert Walus's heart in October 1982 to replace his failing human aortic heart valve. Dep. of Robert Walus, T41:13–24. As Robert Walus admits, his valve is and has been "working normally." Dep. of R.W., T48:13–15. A cardiologist, Dr. Weisfogel,[1] who has examined plaintiff every three or four months since the surgery, has confirmed that the valve is "working normally." Dep. of R.W., T48:2–12.

On or about January 1991, Robert Walus saw a "World in Action" television program on the Arts & Entertainment Network about Shiley heart valves which "shook [him] up." Dep. of R.W., T72:11 to T75:19. The program reported that a very small percentage of the valves had fractured. Pls.' Br. in Opp'n Ex. B at 2.[2] Plaintiff incorrectly understood the program to say that the valves had a failure rate of sixty to seventy percent. Dep. of R.W., T80:10 to T81:11. Plaintiff taped the

program and has watched it several times. Dep. of R.W., T75:20 to T76:10.

Dr. Weisfogel has encouraged plaintiff not to worry about the valve's fracturing. Dep. of Diane Walus, T152:7–19. A surgeon, Dr. Alan J. Spotnitz, wrote to advise plaintiff that the risk of fracture is "very low" and that there is "no reason for [him] to be unduly alarmed at this point." *See* Defs.' Br. in Supp.Ex. B. The letter also stated that the risk of fracture "is lower by a significant amount than other potential complications such as infection, stroke, or bleeding from bloodthinners." *Id.*

The same advice was repeated in a subsequent letter to plaintiff's attorney. *Id.* Ex. C. In that letter, Dr. Spotnitz expressed his regret that plaintiff has not given him "the opportunity to reassure him of some of the fears he seems to have regarding having this valve in place." *Id.*

Plaintiffs, Robert Walus and Diane Walus, brought suit on or about June 17, 1992, in the Superior Court of New Jersey, Law Division, Somerset County, in eleven counts. *See* Pls.' Compl. Plaintiffs assert the theories of negligence, strict liability, failure to warn, fraud, misrepresentation and negligent and intentional infliction of emotional distress. *Id.* Robert Walus's wife, Diane, sues to recover for loss of consortium. *Id.*

On or about August 10, 1992, defendants filed a notice of removal to this court pursuant to 28 U.S.C. § 1441(a), basing jurisdiction on diversity of citizenship and an amount in controversy exceeding $50,000.00 pursuant to 28 U.S.C. § 1332. Defendants then filed a motion for summary judgment, which is the subject of this opinion. Defendants assert that, inasmuch as plaintiff's valve has been working correctly since it was implanted, plaintiffs have no valid cause of action against them, as they have not suffered a legally cognizable injury.

---

**1.** Dr. Weisfogel's first name does not appear in any of the papers before the court.

**2.** The program reported that approximately 82,000 of the Shiley heart valves have been im-

planted. The program went on to note that "[t]he valve is fractured in approximately 300 cases that we are aware of." Pls.' Br. in Opp'n Exhibit B at 2.

*Legal Analysis*

■ Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Brown v. Hilton*, 492 F.Supp. 771, 774 (D.N.J.1980). The burden of showing that no genuine issue of material fact exists rests initially on the moving party. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). This "burden ... may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once a properly supported motion for summary judgment is made, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

■ There is no issue for trial unless the nonmoving party can demonstrate that there is sufficient evidence favoring the nonmoving party so that a reasonable jury could return a verdict in that party's favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510. In deciding a motion for summary judgment, the court must construe the facts and inferences in a light most favorable to the nonmoving party. *Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir.1986). The role of the court, however, is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511.

■ The New Jersey Products Liability Act ("NJPLA") governs plaintiffs' claims. N.J.S.A. § 2A:58C–1 et seq. The NJPLA "applies to 'product liability actions filed on or after the date of enactment,'" July 22, 1987. *Tirrell v. Navistar Int'l, Inc.*, 248 N.J.Super. 390, 398, 591 A.2d 643 (App. Div.), *certif. denied*, 126 N.J. 390, 599 A.2d 166 (1991). A "product liability action" is defined as *"any* claim or action brought by

a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." N.J.S.A. § 2A:58C–1b(3) (emphasis added).

A New Jersey appellate court has held that the NJPLA "established the sole method to prosecute a product liability action." *Tirrell*, 248 N.J.Super. at 398, 591 A.2d 643. After its enactment, "only a single product liability action remains." *Id.* at 399, 591 A.2d 643. *See also Ramos v. Silent Hoist & Crane Co.*, 256 N.J.Super. 467, 473, 607 A.2d 667 (App.Div.1992); *McWilliams v. Yamaha Motor Corp. USA*, 780 F.Supp. 251, 262 (D.N.J.1991).

The Third Circuit has also held that the NJPLA "effectively creates an exclusive statutory cause of action for claims falling within its purview." *Repola v. Morbark Indus., Inc.*, 934 F.2d 483, 492 (3d Cir. 1991). The court went on to predict that "the New Jersey Supreme Court would hold that the NJPLA generally subsumes common law product liability claims, thus establishing itself as the sole basis of relief under New Jersey law available to consumers injured by a defective product." *Id.*

Because the NJPLA "generally subsumes common law product liability claims," *Repola*, 934 F.2d at 492, New Jersey state courts, the Third Circuit and federal district courts have dismissed product liability claims based on theories other than strict liability. *Tirrell*, 248 N.J.Super. at 399, 591 A.2d 643 (negligence claim dismissed); *Repola*, 934 F.2d at 489–94 (negligence and negligent failure to warn claims dismissed); *McWilliams*, 780 F.Supp. at 262 (negligence and breach of implied warranty claims dismissed). As this is a suit for alleged "harm caused by a product," i.e., harm caused by a valve manufactured by defendant Shiley, the NJPLA controls plaintiffs' claims. *See* N.J.S.A. § 2A:58C–1b(3).

It is not in dispute that at the present time the valve implanted in plaintiff's heart is "working normally." *See* Dep. of R.W., T48:13–15. In fact, plaintiffs concede that "[t]here can be no factual dispute at the present time that the valve implanted in

Robert Walus' heart is presently working." Pls.' Br. in Opp'n at 7. Plaintiffs' claims are not the result of a physical injury or some medically identifiable effect linked to a failure of the valve. Plaintiffs are attempting to recover for emotional distress they allegedly incurred as a result of viewing the "World in Action" television program. As such, plaintiffs, in this court's judgment, do not have a cause of action under any of the theories presented.

New Jersey law does not recognize the claims that plaintiffs assert here. No provision in the NJPLA authorizes a cause of action based on a claim that a normally functioning product might fail at some unknown time. New Jersey courts have never allowed recovery based on a product that is and has been working normally. *See Shackil v. Lederle Labor., Div. of American Cyanamid Co.*, 116 N.J. 155, 561 A.2d 511 (1989); *DePrimo v. Lehn & Fink Products Co.*, 223 N.J.Super. 265, 538 A.2d 461 (Law Div.1987).

Numerous other courts have rejected similar claims concerning the same type of Shiley valve as in the instant case, refusing to recognize a cause of action for the fear that a potentially defective product will fail. In *Brinkman v. Shiley, Inc.*, 902 F.2d 1558 (3d Cir.1989), the Third Circuit, applying Pennsylvania law, affirmed the lower court's decision to grant summary judgment for Pfizer and Shiley on claims similar to those asserted in the instant case. The district court held that plaintiff, whose valve had been working properly for seven years, did not have an emotional distress action against the valve's manufacturers based on a television program which discussed incidents of failure or malfunction of the valve. *Brinkman*, 732 F.Supp. 33 (M.D.Pa.1989), *aff'd*, 902 F.2d 1558.

The district court relied on the fact that the "prosthetic heart valve has not malfunctioned or failed to serve the purpose intended, and plaintiffs' claims of emotional distress are not the result of a physical injury or some medically identifiable effect linked to a failure of the prosthetic valve." *Id.* at 34. The court went on to conclude that "no amount of discovery can change the significant material facts that (1) the heart valve has not failed to function properly, and (2) plaintiffs' emotional distress is related to the contents of a television show and not from a defective prosthetic valve." *Id.* at 35.

In *Sill v. Shiley, Inc.*, 909 F.2d 508 (8th Cir.1990), the Eighth Circuit affirmed a district court's order granting defendant's motion for summary judgment on all counts. The lower court had held that plaintiff had no product liability cause of action, because her Shiley valve was functioning properly. *Sill*, 735 F.Supp. 337, 339 (W.D.Mo.1989), *aff'd*, 909 F.2d 508. The court also dismissed plaintiff's claims for intentional and negligent infliction of emotional distress, noting that "[p]laintiff has not shown that it is *likely* that her valve will fail in the future." *Id.* at 340 (emphasis in original). The court explained that, "[i]n the absence of properly presented facts that Shiley had done something to her that has caused her distress, i.e., that there is some defect in the valve implanted in her, plaintiff does not have a cognizable claim for infliction of emotional distress . . . ." *Id.*

A federal court in New York has rejected claims based on a possible future failure of a functioning Edwards–Duromedics heart valve made by another manufacturer. *Bravman v. Baxter Healthcare Corp.*, 794 F.Supp. 96, 100 (S.D.N.Y.1992) (court held that plaintiff "may not be compensated for his fear that his Edwards–Duromedics Heart Valve may one day fail"). The court noted that "New York generally does not recognize a cause of action for a faulty heart valve until the valve actually fails and causes a physical harm." *Id.*

To support its conclusion, the *Bravman* court relied in part on *Martin v. Edwards Lab., Div. of American Hosp. Supply Corp.*, 60 N.Y.2d 417, 469 N.Y.S.2d 923, 457 N.E.2d 1150 (N.Y.1983), which held that a cause of action with respect to a product implanted in the body accrues only upon the malfunction of the product. The *Martin* court explained that "[a]n implanted or inserted device intended to perform a continuing function . . . causes no injury until the product malfunctions. Until that

time the recipient ... has no cause to complain." *Martin*, 469 N.Y.S.2d at 928, 457 N.E.2d at 1155.

In accordance with these decisions, this court holds that, because plaintiff's valve continues to function as intended, any cause of action plaintiffs might have for emotional damage arising out of the valve's failure has not yet accrued.

In their brief in opposition to defendants' motion, plaintiffs appear to have abandoned all of their claims except those alleging fraud on defendants' part. *See* Pls.' Br. in Opp'n at 5–11. Plaintiffs allege that "[d]efendants elected to totally ignore the allegation of fraud contained in the Complaint" and assert that their fraud claims should not be dismissed, since a California state court allowed a claim to stand under similar circumstances. *Id.* at 7, 9–11 (citing *Khan v. Shiley Inc.*, 217 Cal.App.3d 848, 266 Cal.Rptr. 106 (1990)).

This court, however, will follow the reasoning of the Third Circuit in *Brinkman*, 902 F.2d 1558. In *Brinkman*, the Third Circuit, applying Pennsylvania law, affirmed summary judgment for defendants even though plaintiffs alleged "intentional, reckless and/or negligent misrepresentations," in addition to other claims. *See* Defs.' Br. in Supp.Ex. S. The lower court had dismissed plaintiffs' claims because the "heart valve has not malfunctioned or failed to serve the purpose intended." *Brinkman*, 732 F.Supp. at 34.

 New Jersey treats all product liability actions the same, regardless of the theory asserted. *See* N.J.S.A. § 2A:58C–1b(3). Plaintiffs cannot avoid the physical harm requirement by recasting their product liability claims as fraud claims. Plaintiffs' argument that New Jersey courts are reluctant to dismiss "innovative tort claims without full development of facts at trial" is unavailing. *See* Pls.' Br. in Opp'n at 8 (quoting *Becker v. Interstate Properties*, 569 F.2d 1203, 1206 (3d Cir.1977), *cert. denied*, 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978)). "[I]t is beyond the authority of a federal court in [a diversity case] to create entirely new causes of action." *Wolk v. Saks Fifth Ave. Inc.*, 728 F.2d 221, 223 (3d Cir.1984).

In support of their position, plaintiffs also direct the court's attention to N.J.S.A. § 2A:58C–5, a section of the NJPLA which permits an award of punitive damages for intentional misrepresentation. *See* Pls.' Br. in Opp'n at 11–12. This section, however, simply addresses the type of damages that may be recovered if a valid basis for liability is established. Where a valid basis for liability does not exist, as in the instant case, reliance on section 2A:58C–5 is misplaced.

In opposition to the motion, plaintiffs also assert that "[v]ery little discovery has been engaged in this case." *See* Pls.' Br. in Opp'n at 5. However, as the *Brinkman* court noted, "no amount of discovery can change the significant material facts that (1) the heart valve has not failed to function properly, and (2) plaintiffs' emotional distress is related to the contents of a television show and not from a defective prosthetic valve." *Brinkman*, 732 F.Supp. at 35.

Because no genuine issues of material fact exist, and defendants are entitled to judgment as a matter of law, defendants' motion for summary judgment is granted.