**Andrew GLUCKMAN, for himself and as representative of his dog, Floyd, golden retriever, now deceased, Plaintiff,**

v.

**AMERICAN AIRLINES, INC., Defendant.**

**No. 92 Civ. 3740 (SWK).**

United States District Court,
S.D. New York.

Feb. 9, 1994.

Legal Action for Animals, New York City by Jolene R. Marion, for plaintiff.

Gallagher Gossen & Faller, Garden City, NY by James A. Gallagher, for defendant.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

This action is for breach of obligation and various tort claims relating to American Airlines Inc.'s ("American") failure to safely transport Andrew Gluckman's ("Gluckman") pet dog, Floyd. Presently before the Court is defendant's motion, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56, to dismiss the complaint. In the alternative, American asks that, as a matter of law, the Court enter judgment in Gluckman's favor in the amount of $1250.00 for the breach of obligation claim, and find in favor of American for the remaining tort claims. For the reasons set forth below, American's motion is granted in part and denied in part.

### BACKGROUND [1]

Upon graduation from high school in the spring of 1988, Gluckman went camping out west with two high school friends. His parents purchased his round-trip airline ticket, from New York to Phoenix, as a gift. Early in the trip, a golden retriever wandered into Gluckman's campsite; the boys took him in and gave him food and water. The dog joined the campers and became one of their

---

1. Unless otherwise indicated, the following undisputed facts are taken from both parties' statements of undisputed material facts submitted pursuant to Local Civil Rule 3(g) and the Complaint.

party, attaching himself especially to Gluckman. Gluckman named him Floyd.

On June 22, 1988, Gluckman, who had never before bought an airline ticket for himself, telephoned American asking if there was a way to bring Floyd, a perfectly healthy, two-and-one-half-year-old golden retriever, in the passenger cabin of the airplane on the flight home. The agent told Gluckman that, in order to bring Floyd home, Gluckman would have to put him in the baggage compartment. Gluckman could buy a special crate ($80.85) for Floyd to ride in, and pay an additional $30.00 for Floyd's transport.

According to Gluckman, the ticket agent never disclosed that Floyd would be in any danger during the flight by virtue of the fact that he was travelling in the baggage compartment. Specifically, Gluckman claims that the ticket agent did not warn him that (1) the cargo hold was not air-conditioned while the plane was on the ground; (2) American could not monitor conditions in the cargo hold from the cockpit of the plane; (3) the crew could not control the cargo area temperature; or (4) the outdoor temperatures could exceed safety limits set by defendant's own policies.[2] Affidavit of Andrew Gluckman, sworn to on August 18, 1992 (the "Gluckman Aff."), at ¶¶ 10–12. Nor did the ticket agent reveal to Gluckman that Floyd was, in the eyes of American, merely baggage, that the airline's liability for his injury or death was limited, or that Gluckman could insure the dog for more than the standard, limited amount if he desired. *Id.* at ¶¶ 14–15.

On June 23, 1988, Gluckman and Floyd arrived at the Sky Harbor Airport in Phoenix for their flight home. Gluckman paid a $30.00 fee for checking Floyd as excess baggage, but did not make a special declaration of value with respect to the dog nor pay any excess valuation charge.

At the scheduled departure time, the plane taxied away from the gate. Because of me-chanical difficulties, however, the plane was forced to return to the gate, where it remained for over an hour. In Arizona, on that June day, the temperature climbed to 115 degrees fahrenheit. The temperature in the unventilated baggage compartment, where Floyd was stowed, reached 140 degrees fahrenheit.

As the time elapsed, Gluckman realized that the delay would cause him to miss his connection in Chicago. Accordingly, he disembarked the plane to make other arrangements, and asked American to bring him his dog.

When American's agents brought Floyd to Gluckman, Gluckman was devastated to find that Floyd had collapsed from the heat. Floyd was lying on his side panting; his face and paws were bloody; there was blood all over the crate; and the condition of the cage evidenced a panicked effort to escape.

American, after an unexplained delay of an additional forty-five minutes, arranged to bring Floyd to a veterinarian. The veterinarian advised Gluckman that Floyd had suffered heat stroke and brain damage. Although Gluckman stayed with Floyd all night in intensive care, Floyd had to be put to sleep the next morning.

## A. The Tickets

Gluckman's airline ticket was purchased on or about June 4, 1988, by his parents as a graduation gift, and used by him on his outbound flight from New York to Phoenix on or about June 6, 1988 ("Gluckman's ticket"). The ticket, which provided for round trip transportation aboard American, consisted of approximately eight pages. The first four pages consisted of individual flight coupons. The remaining four pages were labelled as follows: **NOTICE ... CONDITIONS OF CONTRACT; NOTICE OF INCORPORATED TERMS; NOTICE OF BAGGAGE LIABILITY LIMITATIONS; and ADVICE TO INTERNATIONAL PASSENGERS ON**

---

**2.** Placing a pet in the baggage compartment of an airplane in any temperature above 85 degrees or below 45 degrees fahrenheit, if ground time is expected to exceed 45 minutes, is strictly forbidden by American. *See* Acceptance of Pets, annexed to the Affidavit of Jolene Marion, sworn to on August 14, 1992 (the "Marion Aff."), as Exhibit "E." As the baggage compartments are pressurized, but not climate controlled, American's policy reflects that extreme temperatures are dangerous to an animal's well-being. *Id.*

**LIMITATION OF LIABILITY.** *See* Gluckman's Ticket, annexed to the Affirmation in Support of Defendant's Motion for Summary Judgment ("Def.Aff."), as Exhibit "D."

Paragraph 3 of the portion of the ticket introduced by the words "NOTICE ... CONDITIONS OF CONTRACT" advised passengers that

> carriage and other services performed by each carrier are subject to: (i) provisions contained in this ticket, (ii) applicable tariffs, (iii) carrier's conditions of carriage and related regulations which are made part hereof (and are available on application at the offices of carrier).

This portion of the ticket also indicated that claims for damage to baggage may be regulated by language contained in American's tariff. *See id.* at ¶ 7 ("In case of damage to baggage ... [s]ee tariffs or conditions of carriage regarding non-International transportation.").

That portion of the ticket which was introduced with the words "NOTICE OF INCORPORATED TERMS" provided that

> Effective January 1, 1983, air transportation to be provided between points in the U.S.... is subject to the individual terms of the transporting air carriers, which are herein incorporated by reference and made a part of the contract of carriage.
>
> \* \* \* \* \* \*
>
> Incorporated terms may include, but are not restricted to: ... (2) Limits on liability for baggage, including fragile or perishable goods, and availability of excess valuation coverage. (3) Claims restrictions, including time periods in which passengers must file a claim or bring an action against the air carrier.
>
> \* \* \* \* \* \*
>
> You may obtain additional information on these items at any U.S. location where the transporting carrier's tickets are sold. You may inspect the full text of each transporting air carrier's rules at its airport and city ticket offices. You may also, upon

request, receive free of charge the full text of the applicable terms incorporated by reference from each of the transporting air carriers. Information on ordering the full text of each air carrier's terms is available at any U.S. location where the air carrier's tickets are sold.

That portion of the ticket introduced with the words "NOTICE OF BAGGAGE LIABILITY LIMITATIONS" provided further that:

> Liability for loss, delay or damage to baggage is limited as follows unless a higher value is declared in advance and additional charges are paid: (1) for travel wholly between U.S. points, to $1250 per passenger on most carriers (a few have lower limits).

On the day of his return flight, Gluckman also purchased an "Excess Baggage Ticket" ("Floyd's ticket"), representing American's receipt of Floyd. On the face of Floyd's ticket, in writing less than ⅟₁₆th of an inch high, appeared the following: "Subject to tariff regulations. For conditions of contract see passenger ticket & baggage check." *See* Excess Baggage Ticket, annexed to Def.Aff., as Exhibit "C."

At the time of Floyd's transport, American's tariff rules[3] provided, in part, that:

> Rules in this tariff constitute the conditions upon which AA [American Airlines] transports or agrees to transport and are expressly agreed to by the passenger to the same extent as if such rules were included as conditions in the contract of carriage.
>
> \* \* \* \* \* \*
>
> Written notice of any and all claims against AA must be given within 21 days of the incident. Any legal action must be commenced within one year. Otherwise, such claims will be considered waived.

The tariff provided further that:

> Liability, if any, for the loss, damage, or delay in delivery of a fare-paying passenger's baggage, or other property (whether

---

**3.** Copies of American's tariff rules are available to the public, free of charge, upon request at any American ticket counter or office. *See* Affidavit of William Hurst, sworn to on August 2, 1991, at ¶ 2.

checked or otherwise delivered into the custody of the carrier) shall not exceed USD 1250.00 for each passenger ... unless the passenger elects to pay for higher liability. The carrier will compensate the passenger for all reasonable, documented expenses incurred as a direct result of loss of, damage to, or delay in the delivery of any personal property ...

*See* Domestic General Rules Tariff, annexed to Def.Aff., as Exhibit "E."

### B. The Lawsuit and Pending Motion

In the present action, Gluckman alleges that American's grossly negligent and reckless conduct resulted in Floyd's destruction. Specifically, Gluckman seeks (1) both compensatory and punitive damages as a result of Floyd's death and his own emotional distress (Count One); (2) compensatory damages for loss of the companionship of his pet (Count Two); (3) compensatory damages for Floyd's own pain and suffering (Count Three); and (4) compensatory damages based upon "the tort of outrage," on the grounds that American acted with reckless disregard of the probability that its conduct would cause Gluckman severe mental anguish (Count Four). Finally, Gluckman claims that American breached its obligation to him by failing to deliver and return Floyd in the same healthy condition in which he was received (Count Five).

Although American concedes that its behavior was negligent and caused Floyd's death, it argues that its tariff, which was appropriately filed with the Civil Aeronautics Board, legally precludes Gluckman from filing this suit more than one year after the incident in question. In the alternative, American requests that judgment be entered in Gluckman's favor in the amount of $1,250.00, which represents the contractual limitation of liability set forth in the ticket. With respect to Gluckman's claims sounding in tort, American requests that the Court dismiss them on the grounds that they fail to state a cause of action.

In response, Gluckman argues that the statute of limitations and liability limitation in his ticket are invalid, as a term of the contract of carriage, because he did not have sufficient notice of these provisions. Claiming he is not bound by the limitations referenced in his ticket, Gluckman contends that he should be able to recover for more than the stated $1,250.00. In addition, Gluckman indicates that the ticket's limitations are not enforceable because (1) American fundamentally breached the contract of carriage by violating federal laws and its own internal policies regarding the transportation of animals; (2) the ticket is inadmissible into evidence under state law; and (3) the contract is voidable as Gluckman was a minor when he bought Floyd's ticket. Finally, Gluckman claims that, as the incorporated terms of the contract do not apply to him because of lack of notice, he is free to sue under the tort theories as well.

### DISCUSSION

### I. Motion to Dismiss

 On a motion to dismiss the complaint, only the "facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken are considered." *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir.1993) (citations omitted). When considering a motion to dismiss, the complaint must be read in the light most favorable to the plaintiff. *Mirman v. Berks & Michaels P.C.*, No. Civ. 8606, 1992 WL 332238, at *1, 1992 U.S.Dist. LEXIS 16707, at *3 (S.D.N.Y. Oct. 26, 1992). Thus, the party seeking dismissal will prevail only if the plaintiff's allegations could not possibly constitute a cause of action. *Samuels v. Air Transp. Local 504*, 992 F.2d at 15. "A complaint may not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

In the case at hand, American contends that plaintiff's first four causes of action must be dismissed as (1) a cause of action for emotional distress caused by the suffering of an animal or loss of companionship of a pet has not been recognized in either the courts

of this State [4] or the courts of this Circuit; and (2) an animal does not have standing to sue. For the reasons set forth below, the Court agrees.

## A. Causes of Action for Negligent and Intentional Infliction of Emotional Distress (Counts One & Four)

Gluckman has alleged claims of both negligent infliction of emotional distress and intentional infliction of emotional distress.

### 1. Negligent Infliction of Emotional Distress (Count One)

■ Under New York law, a cause of action for negligent infliction of emotional distress "arises only in unique circumstances, when a defendant owes a special duty only to plaintiff, or where there is proof of a traumatic event that caused the plaintiff to fear for her own safety." *Cucchi v. New York City Off–Track Betting Corp.*, 818 F.Supp. 647, 656 (S.D.N.Y.1993) (citations omitted); *see also Bravman v. Baxter Healthcare Corp.*, 794 F.Supp. 96, 100 (S.D.N.Y.1992) (noting that "New York has been traditionally skeptical of emotional damage claims, leading to some apparently harsh results"), *aff'd in part, rev'd in part*, 984 F.2d 71 (2d Cir. 1993); *Johnson v. State*, 37 N.Y.2d 378, 382, 372 N.Y.S.2d 638, 641, 334 N.E.2d 590, 593 (1975) (absent contemporaneous physical injury, New York courts are reluctant to compensate solely for emotional harm).

■ In cases where the emotional distress is suffered by a bystander who has witnessed injuries caused to others, recovery is limited to certain "narrowly prescribed instances," *Bravman v. Baxter Healthcare Corp.*, 794 F.Supp. at 100, namely, where the party suffers serious, verified emotional distress as a proximate result of observing the serious injury or death of a family member. *Bovsun v. Sanperi*, 61 N.Y.2d 219, 230, 473 N.Y.S.2d 357, 362, 461 N.E.2d 843, 848 (1984). Thus, in *Young v. Delta Air Lines, Inc.*, 78 A.D.2d 616, 432 N.Y.S.2d 390 (1980), wherein plaintiff sought emotional distress damages in

connection with the transportation and death of her dog, the court held that "New York law does not permit recovery for mental suffering and emotional disturbance as an element of damages for loss of a passenger's property." *Id.*

■ In the case at hand, Gluckman contends that "he was severely distraught by the death and loss of Floyd, and by witnessing some portion of Floyd's physical and mental pain and suffering, and that in addition he was forced to seek psychological counseling." Complaint at ¶ 44. In light of *Young*, however, the Court finds that Gluckman is not entitled to recover for emotional distress damages. Accordingly, the Court dismisses Gluckman's claim for negligent infliction of emotional distress.

### 2. Intentional Infliction of Emotional Distress (Count Four)

Gluckman's Fourth Cause of Action alleges that American has committed "the tort of outrage" in that the defendant acted "with reckless disregard of the extreme probability of its causing plaintiff severe emotional distress." Complaint at ¶ 53. In support of this claim, Gluckman indicates that American's acceptance of Floyd for transport violated the Animal Welfare Act, 7 U.S.C. § 2143, which prohibits any dog from being kept in temperatures higher than 85 degrees; violated a 1985 consent decree which required American to show a training videotape, entitled "Not Just Another Bag," to all its personnel responsible for handling animals; and violated its own internal policies which require it to refuse pets for transport if the temperature is above 85 degrees and the ground time exceeds 45 minutes.

■ To allege an adequate cause of action for intentional infliction of emotional distress, a plaintiff must describe "conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' "

---

4. Although American argues that (1) federal common law, rather than state law, applies to this action; and that, in the alternative, (2) under New York choice of law principles, the substantive law of the State of Arizona, rather than New York, applies, American's papers primarily cite New York law. Accordingly, for purposes of this discussion, New York law controls.

*Cucchi v. New York City Off–Track Betting Corp.*, 818 F.Supp. at 657 (quoting *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 236, 448 N.E.2d 86, 90 (1983)). In addition, under New York law, the conduct must be intentionally directed at the plaintiff. *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir.1985); *Pastre v. Weber*, 717 F.Supp. 992, 995 (S.D.N.Y.1989), *aff'd*, 907 F.2d 144 (2d Cir.1990).

■ As deplorable as it may be for American to have caused the death of an innocent animal, the Court finds no allegation, and no evidence from the facts alleged, that American's conduct was directed intentionally at Gluckman. Accordingly, Gluckman's cause of action for intentional infliction of emotional distress is dismissed.

## B. Cause of Action for Loss of Companionship (Count Two)

■ Relying upon *Brousseau v. Rosenthal*, 110 Misc.2d 1054, 443 N.Y.S.2d 285 (1980) and *Corso v. Crawford Dog and Cat Hosp., Inc.*, 97 Misc.2d 530, 415 N.Y.S.2d 182 (1979), Gluckman contends that the courts of this State recognize a cause of action for loss of the companionship of a pet. The Court disagrees.

In *Brousseau*, the plaintiff left her dog at defendant's kennel. *Brousseau v. Rosenthal*, 443 N.Y.S.2d at 285. When she returned to the kennel, she learned that her dog had died. *Id.* at 285. Applying bailment principles, the court found that the dog's death created a presumption of negligence. *Id.* Thereafter, the court held that the value of the loss of the dog's companionship was legally cognizable as an element of damages. *Id.* at 286. Thus, contrary to Gluckman's reading of the opinion, the *Brousseau* court did not find that the loss of a pet's companionship alone sustained a separate cause of action, but rather, that it was one factor available to assess the dog's actual value to the owner. *Id.*

Although *Corso v. Crawford Dog and Cat Hosp., Inc.*, which holds that "a pet occupies a special place somewhere in between a person and a piece of property," is more on point, the *Corso* court recognized that it was

overruling prior precedent. *Id.* 415 N.Y.S.2d at 183. In *Corso*, the plaintiff, who had arranged an elaborate funeral for her dog, allegedly suffered mental distress when she looked into the dog's casket and found only the remains of a cat. *Id.* The court, in ruling that a pet is something more than personal property, reasoned that the wrongful withholding of a pet's body is analogous to the wrongful withholding of a human's body, and thus, actionable. *Id.* Accordingly, the plaintiff was awarded reasonable compensation, including damages for shock, mental anguish and despondency, as a result of the loss of her dog's body. *Id.*

In viewing a pet as more than property, however, the *Corso* opinion, and the few cases that follow it, are aberrations flying in the face of overwhelming authority to the contrary. *See, e.g., Snyder v. Bio–Lab, Inc.*, 94 Misc.2d 816, 405 N.Y.S.2d 596 (1978) ("[a]s with personal property generally, the measure of damages for injury to, or destruction of, an animal is the amount which will compensate the owner for the loss and thus return him, monetarily, to the status he was in before the loss"); *Stettner v. Graubard*, 82 Misc.2d 132, 368 N.Y.S.2d 683 (1975) (sentiment will not be considered in assessing market value for purposes of determining measure of damages for destruction of dog). In addition, the *Corso* court provides no legal reasoning why prior precedent should be overruled in categorizing pets as more than property. Moreover, and most importantly, none of the decisions cited by plaintiff, including *Corso*, recognize an independent cause of action for loss of companionship. Rather, these cases provide a means for assessing the "intrinsic" value of the lost pet when the market value cannot be determined. *See, e.g., Hersh v. Heiffler*, N.Y.L.J., Oct. 18, 1975, at 16 (noting that where market value cannot be determined, factors such as the animal's age, health and character may be considered in assessing damages); *Zager v. DiMilia*, N.Y.L.J., Aug. 5, 1987, at 13 (same). Accordingly, the Court finds that there is no independent cause of action for loss of the companionship of a pet.

### C. Cause of Action for Floyd's Pain and Suffering (Count Three)

▮ With respect to Count Three of the Complaint, the cause of action for Floyd's pain and suffering, the Court finds that Gluckman has failed to state a claim. As Gluckman acknowledges, "there is not a [sic] yet a cause of action recognized for the pain and suffering of an animal." Plaintiff's Memorandum of Law in Opposition to the Motion for Summary Judgment ("Pl.Mem."), at 39. Accordingly, Count Three of the Complaint is also dismissed.

### II. Motion for Summary Judgment

With respect to Gluckman's claim for breach of obligation (Count Five), American moves for summary judgment, pursuant to Federal Rule of Civil Procedure 56, claiming that, as a matter of law, Gluckman's claim is insupportable.

### A. Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The movant may discharge this burden by demonstrating to the court that there is an absence of evidence to support the non-moving party's case on which that party would have the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The nonmoving party then has the burden of coming forward with "specific facts showing that there is a genuine issue for trial," Fed. R.Civ.P. 56(e), by "a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. at 322, 106 S.Ct. at 2552.

The court "must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion." *Eastway Constr. Corp. v. City of N.Y.*, 762 F.2d 243, 249 (2d Cir.1985); *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1187 (2d Cir. 1987); *see also Adickes v. S.H. Kress and Co.*, 398 U.S. at 158–59, 90 S.Ct. at 1609. But the court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986), and grant summary judgment where the non-movant's evidence is merely colorable, conclusory, speculative or not significantly probative. *Id.* at 249–50, 106 S.Ct. at 2511; *see Knight v. United States Fire Ins. Co.*, 804 F.2d 9, 12–15 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987); *Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir.1986), *cert. denied*, 479 U.S. 1088, 107 S.Ct. 1295, 94 L.Ed.2d 151 (1987). The non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

To determine whether the non-moving party has met its burden, the court must focus on both the materiality and the genuineness of the factual issues raised by the nonmovant. As to the materiality, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510. A dispute over irrelevant or unnecessary facts will not preclude summary judgment, *id.*, but the presence of unresolved factual issues that are material to the outcome of the litigation mandates a denial of the summary judgment motion. *See, e.g., Knight v. United States Fire Ins. Co.*, 804 F.2d at 11–12.

Once the non-moving party has successfully met the burden of establishing the existence of a genuine dispute as to an issue of material fact, summary judgment must be denied unless the moving party comes forward with additional evidence sufficient to establish his or her burden under Rule 56.

*See Celotex Corp. v. Catrett,* 477 U.S. at 330 & n. 2, 106 S.Ct. at 2556 & n. 2 (Brennan, J., dissenting). In sum, if the court determines that "the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. at 587, 106 S.Ct. at 1356 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)); *see also Weg v. Macchiarola,* 654 F.Supp. 1189, 1191–92 (S.D.N.Y.1987).

**B. Binding Effect of the Tickets' Limitation Provisions**

Although American concedes that Floyd's death was an unfortunate incident, and that Gluckman has sustained provable damages, *see* Defendant's Memorandum of Law in Support of Motion for Summary Judgment ("Def.Mem."), at 16, it argues that (1) Gluckman failed to timely commence this lawsuit in accordance with the tariff provisions; and (2) in the alternative, Gluckman's damages are limited to the amount of $1,250.00 by the terms and conditions of his ticket.

In response, Gluckman contends that any limitations contained in the ticket or American's tariff are not binding as (1) the limitations were not "reasonably communicated" to him; (2) American's violations of federal law and their own internal policies constitute a breach of the contract releasing Gluckman from any liability limitation; (3) the contract is inadmissible into evidence; and (4) Gluckman was under eighteen at the time the contract was made, and thus, did not have the legal capacity to enter into a binding contract.

**1. Applicable Law**

 Federal common law governs the validity of an air carrier's limitation of its liability. *Wells v. American Airlines, Inc.,* 88 Civ. 5729, 1991 WL 79396 at *3, 1991 U.S.Dist. LEXIS 6246 at *9 (S.D.N.Y. May 9, 1991); *Angela Cummings, Inc. v. Purolator Courier Corp.,* 670 F.Supp. 92, 94 (S.D.N.Y. 1987); *Shapiro v. United Air Lines,* CV 88–0959, 1989 U.S.Dist. LEXIS 16842, at *6 (E.D.N.Y. Aug. 30, 1989). A legal liability

limitation originates when an airline, pursuant to 49 U.S.C.App. § 1373, files a tariff containing the rules and regulations for the transportation of persons and property with the Civil Aeronautics Board. The tariff constitutes the incorporated terms of the contract between passenger and airline, and "if valid, conclusively and exclusively govern[s] the rights and liabilities between the parties." *Mao v. Eastern Air Lines, Inc.,* 310 F.Supp. 844, 846 (S.D.N.Y.1970); *see also Wells v. American Airlines, Inc.,* 1991 WL 79396, at *3, 1991 U.S.Dist. LEXIS 6246, at *9. Moreover, limitations of liability in tariffs required to be filed are binding on passengers regardless of whether the limitations are embodied in the transportation documents. *Mao v. Eastern Air Lines, Inc.,* 310 F.Supp. at 846.

Certain regulations also affect the form of passenger tickets utilized by air carriers. Specifically, 14 C.F.R. § 253 provides, in pertinent part, that

> A ticket ... that embodies the contract of carriage may incorporate contract terms by reference (i.e. without stating their full text), and if it does so shall contain or be accompanied by notice to the passenger ...

> The incorporated terms may include ... information concerning: (1) Limits on the air carrier's liability for ... goods and baggage ... (2) Claim restrictions, including time period within which passengers must ... bring an action.

14 C.F.R. § 254 further provides that:

> an air carrier shall not limit its liability for ... damages ... of a passenger's personal property including baggage ... to an amount less than $1,250 for each passenger.

These regulations were enacted in order to set uniform disclosure requirements for terms incorporated by reference into contracts of carriage for passenger air transportation. *See* 14 C.F.R. § 253.1.

**2. Communication of the Limitations**

 The issue of adequate notice of the terms and conditions contained in a passenger ticket for interstate transportation is

a question of law to be determined by the Court. *Deiro v. American Airlines, Inc.,* 816 F.2d 1360, 1364 (9th Cir.1987). Courts which have had occasion to examine this issue have adopted a "reasonable communicativeness" test to determine when a passenger of a common carrier is bound by the fine print in a passenger ticket.[5] *Spataro v. Kloster Cruise, Ltd.,* 894 F.2d 44, 46 (2d Cir.1990); *Silvestri v. Italia Societa Per Azioni di Navigazione,* 388 F.2d 11, 14–17 (2d Cir.1968). Simply stated, the test is whether the carrier did all it reasonably could to inform the passenger that the terms and conditions incorporated in the ticket were important matters of contract affecting his or her rights. *Silvestri v. Italia Societa per Azioni Di Navigazione,* 388 F.2d at 17.

To determine "reasonable communicativeness," the Court will employ a two-prong test that includes a case-by-case analysis of (1) the ticket itself, including "size of type, conspicuousness and clarity of notice on the face of the ticket, and the ease with which a passenger can read the provision in question;" and (2) the circumstances surrounding the passenger's purchase of the ticket, namely, the "passenger's familiarity with the ticket, the time and incentive under the circumstances to study the provisions of the ticket, and any other notice that the passenger received outside of the ticket." *Deiro v. American Airlines, Inc.,* 816 F.2d at 1364 (interpreting *Silvestri v. Italia Societa Per Azioni di Navigazione,* 388 F.2d at 14–17); *see also Shankles v. Costa Armatori, S.P.A.,* 722 F.2d 861, 865–66 (1st Cir.1983). "[T]he proper test of reasonable notice must be a case-by-case analysis that examines the ticket itself and the circumstances surrounding the particular carrier-passenger relationship at issue." *Deiro v. American Airlines, Inc.,* 816 F.2d at 1364.

#### a. *Clarity of the Notice*

The first question the Court must address is whether the terms and conditions limiting American's liability were clearly and conspicuously set forth in Gluckman's and Floyd's tickets. American argues that the limitation terms appeared in bold print on Gluckman's and Floyd's tickets, and that the tickets also contained a reference to the incorporated terms set forth in American's published tariff, which was available to Gluckman upon request, free of charge. In response, Gluckman argues that he had insufficient notice of the incorporated terms of the tickets to make the liability limitations enforceable. Specifically, Gluckman contends that the print on the travel documents was too small to constitute reasonable communication, and that Floyd's ticket contained no limiting terms, but rather, merely a reference to Gluckman's ticket which in turn incorporated by reference terms in American's tariff.

Although the Court finds that the notice in the case at hand is not clear and conspicuous, it is sufficient. Floyd's ticket contains language in type less than $\frac{1}{16}$ of an inch high, stating "Subject to tariff regulations. For conditions of contract see passenger ticket and baggage check." The type size of this message is tiny. It is doubtful that this line alone could constitute an effort by American to provide "clear" and "conspicuous" notice to its passengers that important conditions of carriage are contained in the passenger ticket and baggage check.

The notices contained in Gluckman's ticket, however, are more conspicuous and understandable. For instance, the **"NOTICE OF**

---

**5.** As an aside, the parties disagree as to whether the "released valuation doctrine" also applies to this case. The released valuation doctrine provides that an air carrier may validly limit its liability to an agreed value of the goods when: (1) the carrier gives the shipper a fair opportunity to choose between higher and lower liability by paying a greater or lesser fee; (2) the shipper is on notice of the opportunity to pay a higher price for greater coverage and does not choose to pay for higher coverage; and (3) the carrier does not appropriate the property of the shipper for its own use. *See Feature Enters., Inc. v. Continental Airlines,* 745 F.Supp. 198, 200 (S.D.N.Y.1990) (citations omitted). This Court has previously held that "a distinction must be drawn between airline baggage claims [in which the doctrine does not apply] and claims relating to freight or cargo [in which the doctrine is applicable]." *Wells v. American Airlines, Inc.,* 1991 WL 79396, at *4, 1991 U.S.Dist. LEXIS 6246, at *11. As the instant matter involves passenger baggage, however, the "released valuation doctrine" does not apply. *Id.*

INCORPORATED TERMS" appears on Gluckman's ticket in capital letters and in bold print. In type sufficiently large to be legible, extensive text follows the heading, advising passengers that the incorporated terms may include:

> (2) Limits on liability for baggage, including fragile or perishable goods, and availability of excess valuation coverage (3) Claim restrictions, including time periods in which passengers must file a claim or bring an action against the air carrier.

In addition, the "**NOTICE OF BAGGAGE LIABILITY LIMITATIONS**" provides that:

> Liability for loss, delay or damage to baggage is limited as follows unless a higher value is declared in advance and additional charges are paid: (1) for travel wholly between U.S. points, to $1250 per passenger ... Further information may be obtained from the carrier.

Thus, the $1250.00 limitation for damage to baggage is set forth in clear language and sufficiently large type.

Regarding the limitation period for bringing a claim, the ticket portion entitled "**NOTICE ... CONDITIONS OF CONTRACT**" provides that:

> In case of damage to baggage moving in International transportation complaint must be made in writing to carrier ... at the latest, within 7 days from receipt.... See tariffs or conditions of carriage regarding non-International transportation.

and that:

> You may inspect the full text of each transporting air carrier's rules at its airport and city ticket offices. You may also, upon request, receive free of charge the full text of the applicable terms incorporated by reference from each of the transporting air carriers. Information on ordering the full text of each air carrier's terms is available at any U.S. location where the air carrier's tickets are sold.

Although Gluckman is correct in arguing that the tickets themselves do not set forth an exact statute of limitations, but rather, incorporate by reference limitations set forth in American's tariff, other courts have found

that similar provisions provide reasonable notice. *See Shapiro v. United Air Lines,* 1989 U.S.Dist. LEXIS 16842 at *7 (ticket afforded reasonable notice where "conditions of contract" alerted passenger that airline had tariff rules regarding limitation of liability, and that rules were available for inspection); *Feature Enters., Inc. v. Continental Airlines,* 745 F.Supp. at 200 (incorporation of tariff by reference considered adequate notice). Accordingly, the Court finds that the language contained in Gluckman's ticket is sufficient to constitute clear notice.

### b. *Surrounding Circumstances*

■ The Court's inquiry, however, does not stop with the ticket itself. The Court must also consider any extrinsic factors which indicate Gluckman's ability to become meaningfully informed of the contractual terms at stake. American argues that Gluckman had actual notice of the baggage limitations as (1) the travel documents were received by him approximately nineteen days before Floyd's death; and (2) Gluckman admits that he saw signs posted at the American facility in Phoenix advising passengers of the baggage liability limitation. Although Gluckman admits that he saw American's signs relating to the baggage liability limitation at Phoenix Airport, he claims that he never imagined that Floyd would be considered baggage, *see* Gluckman Aff. at ¶ 14, and that, had he been informed of the unsafe flight conditions, he would have taken a train home rather than declare Floyd at a higher value. *Id.* at ¶ 13.

In the instant case, the Court finds an issue of fact as to whether Gluckman was afforded reasonable notice. First, it is undisputed that Gluckman was not an experienced commercial air traveler. In fact, he was a seventeen year old boy who had never shipped an animal before, and never bought an airline ticket. *Id.* at ¶¶ 8–9. Moreover, although Gluckman may have held his own ticket for nineteen days before the incident in question, Floyd's ticket was purchased the day of Gluckman's flight, only hours before boarding.

Second, although Gluckman expressed concern for Floyd's comfort and safety in the

cargo compartment and asked if the dog could ride in the passenger cabin, *id.* at ¶¶ 6–9, American never indicated that there was any danger to Floyd. *Id.* at ¶ 10. Indeed, American did not ask Gluckman the value of his dog; advise him that he could choose a higher rate to ship Floyd; or suggest that Floyd not ride in the cargo hold as the outside temperature was 30 degrees higher than the 85 degrees designated as safe for animal travel. Moreover, American did not disclose that the cargo hold area was not air-conditioned, or that there were no devices in the cockpit to monitor conditions in the area where live animals were placed. *Id.* at ¶¶ 11–12, 15.

Third, Gluckman's ticket refers only to "baggage" and contains no limitation of the time in which to bring an action, instead alluding to the possibility that such limitation exists in American's tariffs. Gluckman avers that he had no knowledge of American's limitation of liability clause for baggage, and that if he had known of it, he never would have thought that it applied to Floyd. *Id.* at ¶ 14. Gluckman contends further that he would have made other arrangements if he had known of the risks in transporting Floyd. *Id.* at ¶ 13. In light of these factors, the Court finds an issue of fact as to whether Gluckman was familiar with the special limits for baggage contained within his ticket.[6] Thus, American's motion for summary judgment with respect to Count Five of the Complaint is denied.

### CONCLUSION

Thus, for the reasons set forth above, American's motion for dismissal, pursuant to Federal Rule of Civil Procedure 12(b)(6), of Counts One through Four of the Complaint is granted. The claims for negligent and intentional infliction of emotional distress, loss of Floyd's companionship and Floyd's pain and suffering are dismissed. American's motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, seeking dismissal of Count Five is denied.

SO ORDERED.

---

**6.** Having determined that the surrounding circumstances create an issue of fact as to whether the limitations were "reasonably communicated" to Gluckman, the Court does not reach Gluckman's alternative arguments, i.e., that (1) American's violations of federal law constitute a material breach of the contract; (2) the contract is inadmissible into evidence; and (3) the contract is voidable as Gluckman did not have legal capacity to contract.